**No. 20-10242**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

————————————

**UNITED STATES OF AMERICA,**

Appellee,

v.

**JACOB LYMAN,**

Defendant-Appellant.

————————————

On Appeal From the United States District Court
for the District of Hawaii
Crim. No. 12-01256 DKW

————————————

**BRIEF FOR APPELLEE**

————————————

KENJI M. PRICE
  *United States Attorney*

MARION PERCELL
  *Chief of Appeals*
  *Assistant U.S. Attorney*
  *District of Hawaii*
  *Room 6-100*
  *300 Ala Moana Blvd.*
  *Honolulu, Hawaii  96850*
  *Telephone:  (808) 541-2850*

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................vi

JURISDICTION AND TIMELINESS ......................................................2

BAIL STATUS .....................................................................................2

STATEMENT OF THE ISSUE................................................................3

PERTINENT STATUTES AND REGULATIONS .....................................3

STATEMENT OF THE CASE .................................................................3

SUMMARY OF ARGUMENT ................................................................8

STANDARD OF REVIEW.....................................................................9

ARGUMENT ....................................................................................10

    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
    IN DENYING LYMAN'S MOTION FOR COMPASSIONATE
    RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)......................10

    A.    The Governing Law...............................................................10

    B.    Lyman, Who Had Contracted COVID-19 and
           Recovered, Failed to Show That He Was Likely to
           Contract COVID-19 Again .....................................................14

    C.    Lyman Failed to Show That He Was Likely to Contract
           COVID-19 in a Facility in Which No Inmates and Only
           Two Staff Were Infected With COVID-19............................22

    D.    This Court Need Not Determine in This Case Whether
           U.S.S.G. § 1B1.13 and Its Commentary Are Binding
           Upon District Courts When Compassionate Release
           Motions Are Brought by Defendants.....................................26

E.    The District Court Was Correct That Section 1B1.13 Is Applicable to Motions Brought by Defendants.....................31

F.    The District Court Correctly Did Not Consider Changes to the Sentencing Laws That Congress Intentionally Made Not Retroactive ....................................41

CONCLUSION ......................................................................46

## TABLE OF AUTHORITIES

**_Cases_**                                                                 **_Pages_**

*Daly-Murphy v. Winston,*
   837 F.2d 348 (9th Cir. 1987) ............................................................ 18

*Dillon v. United States,*
   560 U.S. 817 (2010) ........................................................................ 32

*Dorsey v. United States,*
   567 U.S. 260 (2012) ........................................................................ 43

*Lowry v. Barnhart,*
   329 F.3d 1019 (9th Cir. 2003) ...................................................... 18

*Rudin v. Myles,*
   781 F.3d 1043 (9th Cir. 2015) ...................................................... 19

*Teague v. Lane,*
   489 U.S. 288 (1989) ........................................................................ 34

*Trans-Sterling, Inc. v. Bible,*
   804 F.2d 525 (9th Cir. 1986) ...................................................... 19

*United States v. Addonizio,*
   442 U.S. 178  (1979) ...................................................................... 32

*United States v. Arceneaux,*
   2020 WL 7230958 (9th Cir. Dec. 8, 2020) ................................ 37

*United States v. Bell,*
   823 F. App'x 283 (5th Cir. 2020) ................................................ 37

*United States v. Bermudez,*
   2020 WL 7338556 (E.D. Pa. Dec. 14, 2020) ............................ 22

*United States v. Billings,*
   2020 WL 4705285 (D. Colo. Aug. 13, 2020) ............................ 15

*United States v. Boulware,*
   558 F.3d 971 (9th Cir. 2009) ...................................................... 18

## *Cases*        *Pages*

*United States v. Brooker*,
  976 F.3d 228 (2d Cir. 2020) .............................................................. 39

*United States v. Buckman*,
  2020 WL 4201509 (E.D. Pa. July 22, 2020) ..................................... 24

*United States v. Burks*,
  2020 WL 4927481 (W.D.N.C. Aug. 21, 2020) ................................... 17

*United States v. Carpenter*,
  816 F. App'x 159 (9th Cir. 2020) ................................................... 9, 19

*United States v. Colon*,
  2020 WL 6049215 (D. Conn. Oct. 12, 2020) ..................................... 23

*United States v. Cornelio*,
  2020 WL 6021466 (D. Haw. Oct. 12, 2020) ................................ 26, 27

*United States v. Curtiss*,
  467 F. Supp. 3d 96 (W.D.N.Y. 2020) ................................................ 15

*United States v. Dodd*,
  471 F. Supp. 3d 750 (E.D. Tex. 2020) .............................................. 36

*United States v. Doe*,
  833 F. App'x 366 (3d Cir. 2020) ....................................................... 24

*United States v. Gorman*,
  2020 WL 4342218 (S.D.W. Va. July 28, 2020) ................................ 24

*United States v. Gouveia*,
  2020 WL 6065299 (D. Haw. Oct. 14, 2020) ..................................... 16

*United States v. Gunn*,
  980 F.3d 1178 (7th Cir. 2020) .................................................... 28, 39

*United States v. Hernandez*,
  2020 WL 5203428 (E.D. Cal. Sept. 1, 2020) .................................... 23

*United States v. Hinkson*,
  585 F.3d 1247 (9th Cir. 2009) (en banc) ................................. 9, 27, 29

vii

## *Cases*                                                            *Pages*

*United States v. Ieremia,*
   2021 WL 67313 (D. Haw. Jan. 7, 2021) ..................................... 14, 30

*United States v. Jones,*
   980 F.3d 1098 (6th Cir. 2020) ........................................... 38

*United States v. Justis,*
   2020 WL 4365596 (E.D. Pa. July 29, 2020) .................................... 24

*United States v. Keeling,*
   2020 WL 6273978 (D. Idaho Oct. 26, 2020) ..................................... 22

*United States v. Lindell,*
   2021 WL 420059 (D. Haw. Feb. 5, 2021) ......................................... 26

*United States v. Logan,*
   2020 WL 3960999 (W.D.N.C. Jul. 13, 2020) ................................... 17

*United States v. Lum,*
   2020 WL 3472908 (D. Haw. Jun. 25, 2020) .................................... 35

*United States v. Lynn,*
   2019 WL 3082202 (S.D. Ala. Jul. 15, 2019).................................... 13

*United States v. Mageno,*
   786 F.3d 768 (9th Cir. 2015) ....................................... 18-19

*United States v. Malik,*
   2020 WL 4003289 (D. Md. July 15, 2020) ......................................... 25

*United States v. Markillie,*
   — F. App'x —, 2021 WL 276350 (9th Cir. Jan. 27, 2021) ................. 29

*United States v. McCarns,*
   900 F.3d 1141 (9th Cir. 2018) ........................................... 10

*United States v. McCloud,*
   2020 WL 2843220 (S.D. Ga. Jun. 1, 2020) ...................................... 35

*United States v. McCoy,*
   981 F.3d 271 (4th Cir. 2020) ........................................... 38

## *Cases*                                          *Pages*

*United States v. Molley*,
   2020 WL 3498482 (W.D. Wash. June 29, 2020) ............................... 17

*United States v. Mollica*,
   2020 WL 1914956 (N.D. Ala. Apr. 20, 2020) .................................... 36

*United States v. Moore*,
   2020 WL 7264597 (E.D. Pa. Dec. 10, 2020) ..................................... 14

*United States v. Mortensen*,
   822 F. App'x 634 (9th Cir. 2020) ............................................................. 9

*United States v. Nasirun*,
   2020 WL 686030 (M.D. Fla. Feb. 11, 2020 ........................................ 36

*United States v. Peuse*,
   2020 WL 5076356 (N.D. Cal. Aug. 24) ............................................. 16

*United States v. Pinkston*,
   2020 WL 3492035 (S.D. Ga. June 26, 2020) .................................... 16

*United States v. Platt*,
   2020 WL 3839847 (D. Colo. July 8, 2020) ....................................... 25

*United States v. Purry*,
   2020 WL 5909793 (D. Nev. Oct. 6, 2020) ........................................ 16

*United States v. Raia*,
   954 F.3d 594 (3d Cir. 2020) ................................................................ 22

*United States v. Risley*,
   2020 WL 4748513 (E.D. Cal. Aug. 17, 2020) .............................. 15, 23

*United States v. Ruffin*,
   978 F.3d 1000 (6th Cir. 2020) ............................................................ 40

*United States v. Saldana*,
   807 F. App'x 816 (10th Cir. 2020) ..................................................... 37

*United States v. Shahbazpour*,
   2020 WL 3791633 (N.D. Cal. July 7, 2020) ..................................... 15

***Cases***                                                                    ***Pages***

*United States v. Shields,*
   2019 WL 2359231 (N.D. Cal. June 4, 2019) ....................................... 31

*United States v. Strain,*
   2020 WL 1977114 (D. Alaska Apr. 24, 2020) ................................... 36

*United States v. Thompson,*
   984 F.3d 431 (5th Cir. 2021) ............................................................ 28

*United States v. Townsend,*
   98 F.3d 510 (9th Cir. 1996) ................................................................ 9

*United States v. Walker,*
   601 F.2d 1051 (9th Cir. 1975) .......................................................... 20

*United States v. Willis,*
   382 F. Supp. 3d 1185 (D.N.M. 2019) .......................................... 34-35

*United States v. Wiltshire,*
   2020 WL 7263184 (E.D. Pa. Dec. 9, 2020) ...................................... 14

*United States v. Zahn,*
   2020 WL 3035795 (N.D. Cal. June 6, 2020) ................................... 15

## Statutes and Rules

18 U.S.C. § 3142 ................................................................................. 11

18 U.S.C. § 3231 ................................................................................... 2

18 U.S.C. § 3553 .......................................................................... *passim*

18 U.S.C. § 3582 .......................................................................... *passim*

21 U.S.C. § 841 ........................................................................... 3, 4, 41

21 U.S.C. § 851 ................................................................................. 3-4

28 U.S.C. § 1291 ................................................................................. 2

Fed. R. App. P. 10 ............................................................................. 19

U.S.S.G. § 1B1.13 ...................................................................... *passim*

**INTRODUCTION**

This appeal is from the denial of a motion for compassionate release brought pursuant to 18 U.S.C. § 3582(c)(1)(A). Defendant-appellant Jacob Lyman, through counsel, offered two bases for the motion: (a) his alleged risk of severe illness from COVID-19, and (b) the non-retroactive change to the applicable statutory mandatory minimum that was wrought by the First Step Act after Lyman was sentenced.

The district court correctly concluded that Lyman's risk of contracting COVID-19 in prison was not an extraordinary and compelling reason warranting release in light of two critical facts: Lyman had already contracted COVID-19 and had recovered without becoming seriously ill; and the facility where Lyman was incarcerated had, at the time the district court ruled, *no* inmates with active cases of COVID-19. The district court also correctly concluded that a non-retroactive change in the statutory mandatory minimum was not an extraordinary and compelling reason warranting release. To hold otherwise would be to overrule Congress's decision not to make the statutory amendment retroactive.

1

While the district judge viewed U.S.S.G. § 1B1.13 and U.S.S.G. § 1B1.13 cmt. n.1(A) as binding upon him, and some courts do not, that is immaterial in this case. Judged under any standard, Lyman did not present any extraordinary and compelling reason warranting release.

The district judge found it unnecessary to reach the section 3553(a) factors. The district court correctly concluded that compassionate release was not warranted in this case, and that decision was not an abuse of its discretion. To the contrary, it was well-reasoned and appropriate in light of the facts of the case.

## JURISDICTION AND TIMELINESS

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. The district court's order denying compassionate release was entered on July 27, 2020. ER-1–6. Lyman timely filed a notice of appeal the next day. ER-8 (notice of appeal); ER-38 (docket sheet). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## BAIL STATUS

Lyman is currently incarcerated at Lompoc USP. His projected release date is December 14, 2029.

2

## STATEMENT OF THE ISSUE

Whether the district court abused its discretion when it denied Lyman's motion for compassionate release, (1) given that (a) Lyman had already contracted COVID-19 and did not experience adverse consequences and (b) Lyman failed to show that he was likely to contract COVID-19 again, and (2) given that the reduction in the statutory mandatory minimum of which he would like to take advantage was not retroactive.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### The Criminal Case

In November 2012, Lyman was charged by criminal complaint with possession with intent to distribute methamphetamine, and he was detained pending trial. ER-30–31 (docket sheet). Shortly thereafter, a grand jury returned an indictment charging him with three counts of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). *Id*. The government subsequently filed a Special Information as to Prior Drug Conviction pursuant to 21

3

U.S.C. § 851. ECF No. 29, ER-34. Lyman was therefore subject to a

20-year mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A).

On July 31, 2013, pursuant to a plea agreement, Lyman entered a

plea of guilty to Count 2 of the Indictment. ECF No. 31, ER-34. A year

later, on July 30, 2014, Lyman was sentenced to 240 months'

imprisonment to be followed by 10 years' supervised release, and

Counts 1 and 3 of the Indictment were dismissed. ECF Nos. 54 & 55,

ER-36 (docket sheet); ER-10–15 (judgment).

## **COVID-19 and BOP**

The government is acutely aware that COVID-19 is a serious

illness that presents risks to all citizens, not only inmates. The Bureau

of Prisons (BOP) has taken significant measures in an effort to protect

the health of the inmates in its charge. Unfortunately and inevitably,

some inmates have become ill.

There are many challenging factors to consider during this

unprecedented pandemic. For example, notwithstanding the current

pandemic crisis, BOP must carry out its charge to incarcerate sentenced

criminals to protect the public. It must consider the effect of a mass

release on the safety and health of both the inmate population and the

citizenry.  It must marshal its resources to care for inmates in the most

efficient and beneficial manner possible.  It must assess the

appropriateness and viability of release plans, which are essential to

ensure that a defendant has a safe place to live and access to health

care in these difficult times.  And it must consider a myriad of other

factors, including the availability of transportation for inmates (at a

time that interstate transportation services often used by released

inmates are providing reduced if any service), and of supervision of

inmates once released (at a time that the Probation Office has

necessarily cut back on home visits and supervision).

## The Situation When the District Court Considered Lyman's Motion for Compassionate Release

Lyman was arrested on November 30, 2012, and he was detained

pending trial.  ER-31 (docket sheet).  As of the filing of his

compassionate release motion on July 2, 2020, he had served 91 months

and two days, or about 38%, of his 240-month sentence.

When the district court denied Lyman's motion for compassionate

release, there were no inmates and just two staff members at Lompoc

with active cases of COVID-19.  ER-1–2; ER-5 & n.2.

## The Motion and the Court's Order

On July 2, 2020, Lyman filed, through counsel, a motion for compassionate release. ECF No. 59, ER-37 (docket sheet).[1] The memorandum submitted in support of Lyman's motion for compassionate release argued that FCI Lompoc had suffered the worst COVID-19 outbreak of any federal penitentiary, SER-18, that Lyman suffered from various medical conditions, including asthma, obesity, and chronic kidney disease, SER-20–25, and that he was 40 years old. SER-24. Lyman admitted, however, that he had already contracted COVID-19 and had not had serious symptoms. SER-19.

In a footnote at the end of the memorandum, Lyman noted that his mandatory minimum sentence had been 20 years, and that would have been reduced by the First Step Act—if it applied to him—to 15 years. SER-28 n.33. He conceded that he had "not yet served even 15 years in this case." *Id*. (As noted above, he had served 91 months and

---

[1] Lyman's motion was filed with the district court more than 30 days after Lyman submitted a request to his warden for compassionate release and more than 30 days after the warden denied that request. ECF No. 59-3; ECF No. 59-4. Accordingly, Lyman met the "exhaustion" requirement set forth in 18 U.S.C. § 3582(c)(1)(A).

6

two days—just over *half* of 15 years.)  He then asked, in the footnote, that "the change in law be considered under § 3553(a)."  *Id.*

In a subsequent supplemental memorandum, Lyman argued that "[u]nder today's law, Mr. Lyman would instead face a mandatory minimum sentence of 180 months based on his prior drug conviction, rather than 240-months."  SER-6.  Lyman asked that his sentence be reduced to time served, or at least to 180 months, although that would not result in his immediate release.  SER-7–8.  Lyman noted that, *if* the district court reduced his sentence to 180 months, he would have served more than 50 percent of that sentence.  SER-8.

On July 27, 2020, the district court denied Lyman's motion for compassionate release.  ER-1–6.  In summary:  "First, while Lyman asserts that he suffers from certain risk factors for the coronavirus, the record reflects that he has already contracted the virus and not reported any adverse consequences.  In addition, the facility at which he is incarcerated, although once having a high number of cases, now has no instances of inmate infection.  Second, as far as this Court is concerned, the change in the law occasioned by the First Step Act is not an

"extraordinary and compelling" circumstance warranting release or reduction under Section 3582(c)(1)(A)(i)."  ER-1–2.

This appeal followed.

## SUMMARY OF ARGUMENT

Because Lyman did not demonstrate "extraordinary and compelling reasons" warranting his release, the district court did not abuse its discretion in denying Lyman's motion for compassionate release.  Lyman, who had already recovered from a symptom-free bout of COVID-19, (a) did not show that he was likely to contract COVID-19 for a second time, and he (b) did not show that he was likely to contract COVID-19 in a facility in which no inmates and only two staff were infected with COVID-19.  Furthermore, the district court correctly rejected Lyman's argument that his sentence should be reduced because of a non-retroactive change in the statutory mandatory minimum. Accordingly, Lyman failed to demonstrate "extraordinary and compelling" reasons warranting release.

The question of whether the policy statement, U.S.S.G. § 1B1.13, and its commentary are binding upon district courts when compassionate release motions are brought by defendants is a red

herring in this case. Whether they are or not, the district court did not

abuse its discretion when it concluded that Lyman had failed to

demonstrate extraordinary and compelling reasons warranting his

release after he had served only about 91 months of his 240-month

sentence.

## STANDARD OF REVIEW

This Court reviews denials of motions for a sentence reduction

under 18 U.S.C. § 3582(c)(1)(A), known as motions for compassionate

release, for abuse of discretion. *United States v. Mortensen*, 822 F.

App'x 634, 634 n.1 (9th Cir. 2020); *United States v. Carpenter*, 816 F.

App'x 159, 159 (9th Cir. 2020) (citing *United States v. Townsend*, 98

F.3d 510, 512 (9th Cir. 1996)).

To find an abuse of discretion, the district court's decision must be

"(1) illogical, (2) implausible, or (3) without support in inferences that

may be drawn from the facts in the record." *United States v. Hinkson*,

585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (internal quotations

omitted).

This Court reviews "a district court's interpretation of the

Sentencing Guidelines de novo, its factual findings for clear error, and

9

its application of the Guidelines to the facts of the case for abuse of discretion." *United States v. McCarns*, 900 F.3d 1141, 1143 (9th Cir. 2018).

## ARGUMENT

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING LYMAN'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A).

## A.    The Governing Law

As amended by the First Step Act, Title 18, United States Code, Section 3582(c)(1), provides in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that—

> (1) in any case—

>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>>> (i) extraordinary and compelling reasons warrant such a reduction . . .

10

and that such a reduction is consistent with applicable
policy statements issued by the Sentencing
Commission . . . .

The statute provides for a reduction in a defendant's sentence if
the court determines, after considering the factors set forth in 18 U.S.C.
§ 3553(a) to the extent they are applicable, that "extraordinary and
compelling reasons warrant such a reduction" and the reduction is
consistent with applicable policy statements issued by the Sentencing
Commission. 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's
policy statement, U.S.S.G. § 1B1.13, provides that a court may reduce
the term of imprisonment after considering the § 3553(a) factors if the
court finds that (i) "extraordinary and compelling reasons warrant the
reduction"; (ii) "the defendant is not a danger to the safety of any other
person or to the community, as provided in 18 U.S.C. § 3142(g)"; and
(iii) "the reduction is consistent with this policy statement." U.S.S.G.
§ 1B1.13.

The phrase "extraordinary and compelling reasons" is defined
Application Note 1 to Section 1B1.13 of the Sentencing Guidelines. The
Sentencing Commission recognized that "extraordinary and compelling
reasons" could exist because of a defendant's medical condition where:

11

(i)    The defendant is suffering from a terminal illness . . . [or]

(ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment. (n.1(A)). The commentary also lists a set of circumstances that apply where the inmate is at least 65 years old and another set of circumstances that apply where a member of the inmate's family requires care—neither of which is relevant here—as possible bases for relief. *Id.*, comment. (n.1(B), (C)). Finally, the commentary provides that extraordinary and compelling circumstances may exist if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, comment. (n.1(D)). That last basis "requires a determination by the Bureau of Prisons ('BOP') in the defendant's

12

particular case that some other extraordinary and compelling reason exists." *United States v. Lynn*, 2019 WL 3082202, slip op. at *1 (S.D. Ala. Jul. 15, 2019), *appeal dismissed*, 2019 WL 6273393 (11th Cir. Oct. 8, 2019).

The policy statement refers only to motions filed by the Director of the Bureau of Prisons. That is because the policy statement was last amended on November 1, 2018 and, until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012).

In the view of the government, the district court in this case, and a number of other courts, the policy statement, including Application Note 1, is "applicable" to motions brought by defendants. That view is disputed; some courts disagree. Because Lyman's motion for compassionate release did not set forth extraordinary and compelling reasons for a reduction in his sentence under *any* standard, however, that issue need not be settled in this case.

13

**B.     Lyman, Who Had Contracted COVID-19 and Recovered, Failed to Show That He Was Likely to Contract COVID-19 Again**

For good reasons, many courts have denied relief to defendants who have contracted COVID-19 and recovered. *E.g.*, *United States v. Ieremia*, 2021 WL 67313, at *2 n.3 (D. Haw. Jan. 7, 2021) ("A rare chance of contracting a virus once recovered from simply does not meet the bar for an extraordinary and compelling reason warranting release."), *appeal filed*, C.A. No. 21-10025 (9th Cir. Jan. 21, 2021); *United States v. Moore*, 2020 WL 7264597, at *3 (E.D. Pa. Dec. 10, 2020) ("Where Moore has not faced any medical complications related to his COVID-19 infection or experienced an exacerbation of his underlying health issues, his medical condition does not qualify as 'an extraordinary and compelling reason' that would support his compassionate release."); *United States v. Wiltshire*, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) ("[T]he risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release here. Presently, there is no scientific consensus on the risk of reinfection. . . . Moreover, this Court is unable to find a case granting compassionate release to a defendant who recovered from COVID-19 and was

14

asymptomatic. To the contrary, the consensus is that such a circumstance does not warrant release."); *United States v. Risley*, 2020 WL 4748513, at *6 (E.D. Cal. Aug. 17, 2020) ("Courts generally find that the risk of a second infection does not constitute sufficiently compelling grounds to justify compassionate release."); *United States v. Zahn*, 2020 WL 3035795, at *2 (N.D. Cal. June 6, 2020) (Lompoc inmate recovered and, while there was no certainty about risk of reinfection, "[e]ven so, the immediate threat to Zahn has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i)."); *United States v. Curtiss*, 467 F. Supp. 3d 96, 99 (W.D.N.Y. 2020) ("[T]he fact that, as Defendant contends, there is 'no guarantee that he will not become reinfected and suffer a worse outcome' . . . does not mean that extraordinary and compelling circumstances justify a reduction in his prison sentence."); *United States v. Shahbazpour*, 2020 WL 3791633, at *2 (N.D. Cal. July 7, 2020) (relief denied because "there is no evidence-based consensus [regarding the risk of reinfection] among medical professionals"); *United States v. Billings*, 2020 WL 4705285, at *5 (D. Colo. Aug. 13, 2020) ("At this

point, however, the possibility of reinfection, if not impossible, is strictly hypothetical. That uncertainty militates against an entitlement to compassionate release."); *United States v. Pinkston*, 2020 WL 3492035 (S.D. Ga. June 26, 2020) (relief denied where 70-year-old inmate had recovered after hospitalization for COVID-19 and other conditions were controlled); *United States v. Gouveia*, 2020 WL 6065299 (D. Haw. Oct. 14, 2020) (denying relief for Lompoc inmate who tested positive and experienced shortness of breath; noting that as of October 14, 2020, "even if reinfection is possible, it appears to be extremely rare, as reinfections have been reported only a few times in the more than 6 million cases to date."); *United States v. Purry*, 2020 WL 5909793, at *2 (D. Nev. Oct. 6, 2020) (possibility of reinfection does not change earlier denial of relief; "a possibility that is unconfirmed by science is insufficient to create an extraordinary and compelling circumstance justifying his release"), *appeal filed*, C.A. No. 20-10341 (9th Cir. Oct. 21, 2020); *United States v. Peuse*, 2020 WL 5076356, at *3 (N.D. Cal. Aug. 24, 2020 (collecting cases showing that courts have consistently denied "compassionate release to a defendant who has recovered or is expected to recover from COVID-19 with no symptoms."); *United States v. Davis*,

2020 WL 3790562, at *3 (S.D.N.Y. July 7, 2020) (risk of reinfection is only "speculative" and not sufficient); *United States v. Burks*, 2020 WL 4927481, at *3 (W.D.N.C. Aug. 21, 2020) ("defendant is 73 years old and suffers from numerous medical conditions, including heart disease, diabetes, and hypertension"; however, "[d]efendant cannot now meet his burden of establishing that his risk is extraordinary and compelling because he has already contracted the virus and escaped unscathed"), *appeal filed*, C.A. No. 20-7357 (4th Cir. Sep. 4, 2020); *United States v. Logan*, 2020 WL 3960999, at *2 (W.D.N.C. July 13, 2020) ("The Defendant cannot meet his burden of establishing that his risk of contracting COVID-19 is an extraordinary and compelling reason for a sentence reduction when he has already contracted—and beaten—the virus."); *United States v. Molley*, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020) (scientific uncertainty regarding risk of reinfection "cuts against compassionate release," given that "the party seeking release bears the burden of showing" that extraordinary circumstances exist).

Lyman told the district court that "there simply is not enough experience with COVID-19 to say that Mr. Lyman is safe from the potentially devastating effects of COVID-19 . . . ." SER-20. That

argument turns the burden of proof on its head: The burden falls upon Lyman to demonstrate that he is *not* safe, and, more generally, that extraordinary and compelling reasons warrant his release.

Lyman admits that he "was among those who had become infected and recovered," OB 8, and he does not contest the district court's findings that "the record reflects that he has already contracted the virus and not reported any adverse consequences," ER-1, and that "he denied any symptoms, such as a cough, as a result of the virus." ER-4. He argues—based largely on sources that post-date the district court's decision, *see* OB 35-38—that individuals who have contracted COVID-19 and recovered *can* contract the disease again. No one disputes that it is *possible* for individuals to become reinfected; the question, rather, is whether it is at least *likely* that Lyman will.

It should be noted that, except in unusual circumstances, this Court "consider[s] only the district court record on appeal," *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003), and it "generally will not allow parties to supplement the record on appeal." *United States v. Boulware*, 558 F.3d 971, 976 (9th Cir. 2009); *Daly-Murphy v. Winston*, 837 F.2d 348, 351 (9th Cir. 1987); *see United States v. Mageno*, 786 F.3d

768, 775 n.6 (9th Cir. 2015) ("Rule 10(e) cannot be used to add to or enlarge the record on appeal to include material which was not before the district court."); *Rudin v. Myles*, 781 F.3d 1043, 1057 n.18 (9th Cir. 2015) (documents that are not filed with district court generally cannot be made part of appellate record); Fed. R. App. P. 10(a). This Court does not consider events that occurred after the district court's judgment, because such matters are outside the record on appeal. *E.g.*, *Trans-Sterling, Inc. v. Bible*, 804 F.2d 525, 528 (9th Cir. 1986); *see United States v. Carpenter*, 816 F. App'x 159, 160 (9th Cir. 2020) (declining, on appeal from denial of compassionate release motion, to consider documents appellant submitted for first time on appeal; citing *Rudin v. Myles*).

The guidance from the Centers for Disease Control (CDC), the defendant's medical condition and place of incarceration, and the situation at a given correctional facility are all factors considered by the district court that can change very quickly. Indeed, they may change repeatedly during the pendency of an appeal, which means that any attempt to consider the current status of those factors as the appeal progresses through its various stages would create a serious risk of

chaos. It is therefore particularly appropriate—and necessary—that this Court be here concerned "only with the record before the trial judge when his [or her] decision was made." *United States v. Walker*, 601 F.2d 1051, 1055 (9th Cir. 1975). This Court should therefore ignore Lyman's heavy reliance upon sources that post-date the district court's decision in this case.[2]

In any event, no one is claiming that it is *impossible* to contract COVID-19 a second time. Significantly, however, Lyman bore the

---

[2] It should be noted that Lyman's description of subsequent authorities is also one-sided. If this Court *were* to consider subsequent authorities, it might note that recent studies indicate that COVID-19 immunity, which results from antibodies produced following infection with COVID-19, lasts many months, if not years. The National Institutes of Health reported on December 8, 2020, for example, that "[n]ew findings from a study of thousands of healthcare workers in England show that those who got COVID-19 and produced antibodies against the virus are highly unlikely to become infected again, at least over the several months that the study was conducted. In the rare instances in which someone with acquired immunity for SARS-CoV-2 subsequently tested positive for the virus within a six month period, they never showed any signs of being ill." NIH Director's Blog, *Study of Healthcare Workers Shows COVID-19 Immunity Lasts Many Months*, https://directorsblog.nih.gov/2020/ 12/08/study-of-healthcare-workers-shows-covid-19-immunity-lasts-many-months/ (last visited Dec. 29, 2020); *see also* Apoorva Mandavilli, *Immunity to the Coronavirus May Last Years, New Data Hint* (The New York Times, Nov. 17, 2020 (updated Nov. 27, 2020)), *available at* nytimes.com/2020/11/17/health/ coronavirus-immunity.html (last visited Dec. 29, 2020).

burden of demonstrating to the district court that there were extraordinary and compelling reasons warranting a reduction in his sentence, and he presented no evidence to the district court (indeed, even with his improper citations to subsequent events, he has presented nothing to this Court either) showing that it is *likely* that he will contract COVID-19 a second time. A mere possibility that he might does not rise to the level of an "extraordinary and compelling reason."

The CDC opines, as a general proposition, that persons with certain medical conditions are at increased risk of severe illness if they contract COVID-19. https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The argument that *Lyman*, in particular, is at increased risk of severe illness is, however, largely countered by the fact that he *actually* contracted COVID-19 *without* suffering any adverse consequences. In other words, the evidence indicates that the generalization does not apply to him. Lyman offered the district court no evidence that *he* is at greater risk of severe illness if he contracts COVID-19 than anyone else would be. For that reason, too, the denial of his motion for compassionate release was not an abuse of the district court's discretion.

21

## C. Lyman Failed to Show That He Was Likely to Contract COVID-19 in a Facility in Which No Inmates and Only Two Staff Were Infected With COVID-19

"[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The inmate must show that there is a substantial likelihood that he will contract COVID-19 if he remains incarcerated, and further that he is more likely to contract COVID-19 if he remains incarcerated than if he were released. *E.g.*, *United States v. Keeling*, 2020 WL 6273978, at *3 (D. Idaho Oct. 26, 2020) ("Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison.") (citing cases).

As the district court noted, Lompoc, where Lyman was housed, had no active cases among the inmate population. ER-5. Where there are few active cases at a facility, no particular inmate is likely to contract COVID-19, and courts routinely deny relief. *E.g.*, *United States v. Bermudez*, 2020 WL 7338556, at *2 (E.D. Pa. Dec. 14, 2020) ("[M]ultiple courts have found that, despite its earlier failures to

22

contain the disease within its inmate population, Lompoc has since 'implemented sufficient protocols that the prison is now able to adequately respond, monitor, and care for its inmates' during the pandemic."); *United States v. Colon*, 2020 WL 6049215, at *7 (D. Conn. Oct. 12, 2020) ("[I]n determining whether 'extraordinary and compelling reasons' warrant a prisoner's early release, courts routinely consider the status of coronavirus infections at the particular institution where the defendant is housed.") (citing cases); *United States v. Hernandez*, 2020 WL 5203428, at *3 (E.D. Cal. Sept. 1, 2020) ("Because of the small number of Covid 19 cases at FCI Lompoc, the changes that prison has made, and the Defendant's status as one who 'might be' at a heightened risk because of hypertension, Defendant has failed to demonstrate extraordinary and compelling circumstances that would justify compassionate release."); *United States v. Risley*, 2020 WL 4748513, at *7 (E.D. Cal. Aug. 17, 2020) ("Given that Defendant has recovered from Covid 19 without severe symptoms, and considering the small number of Covid 19 positive cases at FCI Lompoc, as well as the recognized improvements that Lompoc has made with respect to Covid 19, the Court concludes that the possibility of reinfection from Covid 19 is too

speculative to warrant compassionate release."); *United States v. Justis*, 2020 WL 4365596, at *3 (E.D. Pa. July 29, 2020) (where institution has no confirmed cases of COVID-19 among its inmate population and only two confirmed cases among its staff, inmate "has not demonstrated a more than mere speculative risk of exposure to COVID-19"), *aff'd sub nom. United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020) (per curiam) (as to district court's findings that institution had only two COVID-19 cases and that inmate's fear he would contract COVID-19 was largely speculative, inmate had "raised nothing calling those conclusions into question"; district court did not abuse its discretion by denying motion); *United States v. Gorman*, 2020 WL 4342218, at *3 (S.D.W. Va. July 28, 2020) (although inmate had combination of medical conditions that placed him at risk of developing severe illness from COVID-19, he was housed at facility that reported only one inmate and one staff member who had tested positive, and his risk was therefore merely speculative); *United States v. Buckman*, 2020 WL 4201509, at *4 (E.D. Pa. July 22, 2020) ("When prisons can keep the number of positive COVID-19 cases low or even at zero, which is the case at Alderson FPC, the risk of exposure is too speculative to render the circumstances extraordinary

and compelling."); *United States v. Malik*, 2020 WL 4003289 (D. Md. July 15, 2020) (although inmate had medical conditions that increased his risk of severe illness if he contracted COVID-19, no extraordinary and compelling reasons for release were present in part because there were no confirmed active cases of COVID-19 at his institution); *United States v. Platt*, 2020 WL 3839847, at *3 (D. Colo. July 8, 2020) ("The Court recognizes that additional waves of the virus may continue to threaten the facility until a vaccine or an effective treatment is discovered. However, while FCI Lompoc appears to have been a frightening place for a prisoner to be housed at the outset of the pandemic, conditions appear to have improved greatly and the BOP now has much greater experience dealing with COVID-19.")

The district court in this case did not abuse its discretion when it concluded that Lyman, who was not particularly likely to contract COVID-19 while incarcerated at an institution that had zero active cases among its inmates and only two active cases among its staff, did not present extraordinary and compelling reasons warranting a reduction in sentence.

**D.    This Court Need Not Determine in This Case Whether U.S.S.G. § 1B1.13 and Its Commentary Are Binding Upon District Courts When Compassionate Release Motions Are Brought by Defendants**

In his opening brief, Lyman argues at great length that the district judge in this case, the Honorable Derrick K. Watson, United States District Judge, incorrectly believed that he was bound by the applicable policy statement, U.S.S.G. § 1B1.13, and its commentary. OB 8-14, 16-31.  Further, Lyman states flatly that, "[l]argely driven by that notion," Judge Watson "has yet to grant any defendant § 3582(c)(1)(A) relief during the Covid-19 pandemic."  OB 10.

In recent months, however, Judge Watson *has* granted motions for compassionate release.  Order Granting Motion for Compassionate Release, *United States v. Mapuatuli*, Crim. No. 12-1301 DKW, ECF No. 392 (D. Haw. Feb. 9, 2021) (Watson, J.) (granting motion for compassionate release because inmate is suffering from end-stage renal disease, COVID-19, and debilitating stroke); *United States v. Lindell*, 2021 WL 420059 (D. Haw. Feb. 5, 2021) (Watson, J.) (granting motion for compassionate release based upon inmate's deteriorating physical health and receipt of subpar medical care while incarcerated); *United States v. Cornelio*, 2020 WL 6021466 (D. Haw. Oct. 12, 2020) (Watson,

J.) (granting motion for compassionate release based upon inmate's obesity, type 2 diabetes, and other medical conditions, combined with high risk of contracting COVID-19 at facility). Judge Watson's written opinions in these cases, particularly *Cornelio*, make clear that—even if his conclusion (and the government's) that U.S.S.G. § 1B1.13 applies to motions brought by defendants is not correct—that view did not and does not constrain his exercise of discretion in cases where extraordinary and compelling reasons actually warrant release.

Judge Watson did not protest that he was *unable* to grant relief that he might otherwise have granted because he was *constrained* to apply U.S.S.G. § 1B1.13 and its commentary. To the contrary, he simply concluded that the reasons put forward by the defense were not extraordinary and compelling. The record strongly supports his reasoning. *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

It would be one thing to conclude, as a few courts of appeals have done, that the policy statement and its commentary are not binding upon district courts (a conclusion with which, as discussed below, the government disagrees). It would be a radically different thing, however,

27

to conclude that a district court *cannot* consider the factors set forth in the policy statement and commentary and doing so would be an abuse of a district court's discretion. At worst, Judge Watson, considering those factors, concluded that Lyman had not shown extraordinary and compelling reasons that warranted Lyman's release.

Given that, under *any* standard, Lyman failed to show that extraordinary and compelling reasons warrant his release, Judge Watson's decision was hardly an abuse of discretion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (Easterbrook, J.) (finding U.S.S.G. § 1B1.13 and its commentary not binding upon district courts when motions brought by defendants, but observing that "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge

28

who strikes off on a different path risks an appellate holding that judicial discretion has been abused.").

In summary, Judge Watson evaluated appropriate criteria, particularly Lyman's likelihood of contracting COVID-19 again; his likelihood of contracting COVID-19 at his facility; and, in light of his recovery from his first bout of COVID-19 without adverse effects, his likelihood of becoming seriously ill if he did contract COVID-19 again. Whether or not section 1B1.13 and its commentary are binding on district courts, it is appropriate—and certainly not an abuse of discretion—for a district court to consider those criteria. As in *United States v. Markillie*, — F. App'x —, 2021 WL 276350 (9th Cir. Jan. 27, 2021), "[r]egardless of the applicability of U.S.S.G. § 1B1.13, the district court properly denied the motion on the basis of statutory factors set forth in § 3582(c)(1)(A)(i) . . . ." *Id.* at \*1.

To find an abuse of discretion, the district court's decision must be "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (internal quotations omitted). The district court's decision was none of those things. Indeed,

the district court's decision was grounded in the same reasoning it would have engaged in if it had been bound only by the statutory text of the First Step Act.

As Judge Watson found in a similar case:

> If this Court did not find the policy statement controlling, [the defendant] imagines he would be entitled to the relief he seeks. But the terms "extraordinary" and "compelling" must mean something and even courts that do not find the policy statement to be controlling look, largely, at the same criteria in the policy statement and considered by this Court. . . . Whether the policy statement is binding is, in other words, of little practical consequence because courts, by and large, consider the same criteria regardless (*e.g.,* the defendant's health conditions and risk at his facility).

*United States v. Ieremia*, 2021 WL 67313, at *3-4 n.3 (D. Haw. Jan. 7, 2021). It bears reiterating that, as Judge Watson pointed out in *Ieremia*, "courts, by and large, consider the same criteria (*e.g.*, the defendant's health conditions and risk at his facility)," *id.*, regardless of whether they view the policy statement and commentary as binding.

Incidentally, this case would be a poor vehicle to decide the legal issue whether § 1B1.13 and its commentary are "applicable" to defendant-filed motions for compassionate release, because it is not primarily a "catchall" case. In a "catchall" case, the district court grants relief for some new reason beyond the text of § 1B1.13 and its

30

commentary. *See, e.g.*, *United States v. Shields*, 2019 WL 2359231, at

\*4 (N.D. Cal. June 4, 2019) (denying motion for compassionate release

based on illness of defendant's daughter). That type of case would force

an appellate court to decide whether district courts can or cannot grant

relief for reasons beyond the text of section 1B1.13. In this case (with

the arguable exception of Lyman's argument concerning the change in

statutory mandatory minimum, which is discussed in subsection (F)

below), the merits of Lyman's arguments do not depend upon whether

section 1B1.13 and its commentary were or were not binding upon the

district court.

**E.      The District Court Was Correct That Section 1B1.13 Is
Applicable to Motions Brought by Defendants**

As noted above, whether section 1B1.13 and its commentary are

applicable to motions brought by defendants or only motions brought by

the Bureau of Prisons does not determine the outcome of this appeal:

Either way, the district court did not abuse its discretion when it

decided that an inmate who has already contracted and recovered from

COVID-19, and who is housed at a facility with very few active cases of

COVID-19, has not shown extraordinary and compelling reasons

warranting release.

In the government's view, the district court was correct that section 1B1.13 and its commentary apply to motions brought by defendants. The issue need not be reached in this case—and, by the time this Court decides this case, this Court may already have decided the issue anyway. In case this Court *does* reach the issue in this case, however, it should hold that section 1B1.13 and its commentary are applicable to all motions for compassionate release brought pursuant to 18 U.S.C. § 3582(c)(1)(A), whether brought by the BOP or by defendants.

A court may generally "not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 824-25 (2010). A district court has no inherent authority to reconsider or alter an imposed sentence except pursuant to statutory authorization. *See, e.g.*, *Dillon*, 560 U.S. at 824; *United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979) ("The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it.") (quotation omitted). Congress explicitly mandated in section 3582(c) that any reduction in a sentence be "consistent with applicable policy statements issued by the

32

Sentencing Commission." 18 U.S.C. §§ 3582(c)(1), (2). At the very least, it was Congress's intent that an applicable policy statement be issued and that it be followed.

The only such policy statements are embodied in U.S.S.G § 1B1.13 and its commentary. It is true that U.S.S.G. § 1B1.13 refers to motions filed by the Director of the Bureau of Prisons—but that is merely a function of its age. It was promulgated at a time when those were the only type of motions for compassionate release that *could* be filed. Only since the First Step Act became law in 2018 have defendants themselves been able to file motions for compassionate release. *See* First Step Act, § 603(b), 132 Stat. 5194 (2018). That peculiar quirk of timing should not render Application Note 1(A)'s definition of "extraordinary and compelling reasons" inapplicable to an inquiry into what constitutes "extraordinary and compelling reasons" for release under the statute.

Nothing in the First Step Act altered the substantive criteria for compassionate release. The plain language and purpose of the exhaustion requirement in § 3582(c) require the movant to present the same basis for relief to the BOP and to the district court. That basis for

33

relief should, accordingly, be considered when deciding a motion for compassionate release.

The courts are asked to determine whether an inmate has presented an "extraordinary and compelling reason" justifying early release under the definition of that term promulgated by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. A contrary holding would essentially give courts a discretionary power to release inmates even after the imposition of a congressionally-mandated minimum sentence; would eliminate the crucial finality of criminal sentences and thus deprive the criminal justice system "of much of its deterrent effect," *Teague v. Lane*, 489 U.S. 288, 309 (1989); and would subsume section 3582(c)(2), under which the courts may reduce a sentence based on an amendment to the Guidelines only if the Sentencing Commission has made the amendment retroactive.

Although the history and text of the First Step Act suggest that Congress intended to broaden the availability of compassionate release (its title is "Increasing the Use and Transparency of Compassionate Release"), Congress in fact only expanded *access* to the courts; it did not change the applicable *standard*. *See United States v. Willis*, 382 F.

34

Supp. 3d 1185, 1187 (D.N.M. 2019) ("Aside from allowing prisoners to bring a motion directly, the First Step Act did not change the standards for compassionate release."). Congress did not revise the statute's substantive text or alter the Sentencing Commission's authority to define "extraordinary and compelling reasons." And there is no hint in the text of the statute, the First Step Act, or the Sentencing Commission's policy statements that the identity of the movant should affect the meaning of the phrase "extraordinary and compelling reasons." *See, e.g.*, *United States v. Lum*, 2020 WL 3472908, at *3-4 (D. Haw. Jun. 25, 2020) ("Courts are not at liberty to treat the Commission's commentary as merely persuasive, of only limited authority, or not binding on the federal courts"; accordingly, "the Commission's commentary is a binding interpretation of the phrase 'extraordinary and compelling.'" (brackets and some internal quotation marks omitted)); *United States v. McCloud*, 2020 WL 2843220, at *2 (S.D. Ga. Jun. 1, 2020) (contrary interpretation "contravenes express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision"; "§ 3582(c)(1)(A) as amended by the

First Step Act *still* requires courts to abide by policy statements issued by the Sentencing Commission."); *United States v. Strain*, 2020 WL 1977114, at *4 (D. Alaska Apr. 24, 2020) ("Nothing in the First Step Act nullifies, amends, or expressly contradicts the definition of 'extraordinary and compelling reasons' provided by U.S.S.G. § 1B1.13. Thus, the Court finds that it is the clear command of 18 U.S.C. § 3582(c)(1)(A) that district courts may only grant compassionate release where consistent with U.S.S.G. § 1B1.13 as written."); *United States v. Mollica*, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020) ("Multiple district courts within this Circuit that have addressed the issue have found that the policy statement, as written, remains in effect until the Sentencing Commission sees fit to change it . . . ."); *United States v. Nasirun*, 2020 WL 686030, slip op. at *2 (M.D. Fla. Feb. 11, 2020) (holding district court without authority to grant relief where defendant does not meet criteria set forth in § 1B1.13 commentary); *United States v. Dodd*, 471 F. Supp. 3d 750, 757-58 (E.D. Tex. 2020) ("The fact that Congress's change to section 3582's procedural mechanism necessarily overrides a Sentencing Commission policy statement concerning the same procedural mechanism cannot be

translated into congressional intent to alter the statute's provisions governing the merits of compassionate-release motions."); *see also United States v. Bell*, 823 F. App'x 283, 284 (5th Cir. 2020) (dismissing appeal as frivolous where reduction of sentence based on inmate's proffered reasons would not be consistent with section 1B1.13 and its commentary); *United States v. Saldana*, 807 F. App'x 816, 821 (10th Cir. 2020) (holding district court should have dismissed motion for compassionate release brought on basis not identified as extraordinary and compelling reason in section 1B1.13 commentary).

While it has not yet addressed the issue in a precedential opinion, this Court treated section 1B1.13 as binding upon the district court in *United States v. Arceneaux*, 2020 WL 7230958 (9th Cir. Dec. 8, 2020) (unpublished). In that case, this Court, holding that the district court had not abused its discretion by denying appellant's motion for compassionate release, observed that the district court had "considered the nature and circumstances of the armed robberies for which Arceneaux was convicted and his lengthy criminal history, and reasonably concluded that a reduced sentence was not appropriate in light of the danger Arceneaux posed to the community. *See* 18 U.S.C.

37

§ 3582(c)(1)(A) (reduction must be consistent with the Sentencing Commission's policy statements); U.S.S.G. § 1B1.13(2) (district court may grant compassionate release only if '[t]he defendant is not a danger to the safety of any other person or to the community')." *Id.*, slip op. at *1.

There is no logical reason to treat motions filed by defendants differently from motions filed by Bureau of Prisons. The government respectfully suggests that the courts that have found otherwise merely wish—in some cases for understandable reasons—to exercise their discretion beyond the authority granted by Congress. Until Congress acts, or the Sentencing Commission modifies its policy statement, the government respectfully submits that the district courts are bound by section 1B1.13 and the definition of "extraordinary and compelling reasons" set forth in the commentary.

The courts who have ruled against the government on this issue have done so on the ground that section 1B1.13 is not "applicable" to defendant-filed motions. *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) ("[T]here currently exists no 'applicable policy statement[].'"); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020) ("§ 1B1.13 does

38

not 'apply' to cases where an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners.  In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to Gunn's request."); *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) ("Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling.").  That is because the prefatory paragraph of § 1B1.13 begins with the phrase "Upon motion of the Director of the Bureau of Prisons," and these cases involve motions by a defendant, not BOP.  But that starts the statutory analysis at the wrong end.  Courts should not constrain statutory analysis based on the prefatory text of a policy statement, particularly when the pertinent part of the policy statement at issue is the definition of a key statutory term, and that definition is contained in a different part of the policy statement that omits reference to BOP-filed motions.

"Applicable" means "relevant" or "appropriate." *See United States v. Ruffin*, 978 F.3d 1000, 1007 (6th Cir. 2020) (quoting Webster's New World Dictionary of American English 67 (3d coll. ed. 1988)). "Relevant" means "bearing upon or connected with the matter in hand; pertinent." Dictionary.com. Other definitions of "applicable" include "affecting or relating to a person or a thing." Cambridge Dictionary, *available at* dictionary.cambridgeorg/us/.

The definition of the key statutory term at issue ("extraordinary and compelling reasons") promulgated by the very body identified in the statute (the Sentencing Commission), must be "relevant" to (meaning "bearing upon" or "connected with") the analysis commanded by the statute. The fact that the prefatory clause in the body of section 1B1.13 causes it to apply to certain other types of motions does not mean that the definition of "extraordinary and compelling" in Application Note 1(A) has no "bearing" on or "connection" to the statutory language at issue—particularly since Application Note 1(A) does not refer to BOP-filed motions. Similarly, the fact that the policy statement was promulgated before the statute was revised to allow defendant-filed motions for compassionate release does not eliminate the "relevance" to

the statutory analysis of the Sentencing Commission's definition of "extraordinary and compelling" in Application Note 1(A). It would be error to ignore Application Note 1(A) when determining whether a sentencing reduction is "consistent with applicable policy statements issued by the Sentencing Commission," because Application Note 1(A) is necessarily "connected" to the statutory language that it defines. The courts that hold otherwise construe the statutory term "applicable" too narrowly.

## F. The District Court Correctly Did Not Consider Changes to the Sentencing Laws That Congress Intentionally Made Not Retroactive

Section 401 of the First Step Act, which was enacted on December 21, 2018, made the minimum mandatory sentence set forth in 21 U.S.C. § 841(b)(1)(A) applicable to defendants who were previously convicted of a "serious drug felony" instead of merely a "felony drug offense," and it reduced the minimum mandatory sentence for a person who had been convicted of one such prior drug offense from 20 years to 15 years. First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194 (Dec. 21, 2018). Lyman posits that he would therefore be subject to a 15-year mandatory minimum sentence, rather than a 20-year mandatory

41

minimum sentence, if he were sentenced today. OB 42. The First Step Act itself provides, however, that section 401 and the amendments made by it "shall apply to any offense that was committed before the date of enactment of this Act, *if* a sentence for the offense has not been imposed as of such date of enactment." First Step Act, § 401(c) (emphasis added). Lyman—who was sentenced in 2014—does not deny that a sentence for his offense had been imposed as of the date of enactment, December 21, 2018.

In a footnote in his original motion for compassionate release, Lyman asked the district court to consider the change in the mandatory minimum under 18 U.S.C. § 3553(a). SER-28 n.33. He gave the argument more attention in a supplemental memorandum, arguing that "such changes in law constitute extraordinary and compelling reasons for a sentence reduction." SER-7. His opening brief argues that the district court should consider the change in the mandatory minimum as a section 3553(a) factor, OB 42, but it also implies that the district court should have reduced Lyman's sentence solely because the mandatory minimum was subsequently reduced. OB 44.

42

The district court found "entirely unpersuasive Lyman's argument that a change in the law—the First Step Act—constitutes an 'extraordinary and compelling' circumstance under Section 3582(c)(1)(A)(i)." ER-5. In the first place, such a reduction would not be consistent with Application Note 1 to U.S.S.G. § 1B1.13, which, with one exception the district court found inapplicable, focuses upon health concerns of various kinds. ER-5–6. Equally importantly, "deeming the First Step Act an 'extraordinary and compelling' circumstance would also be inconsistent with the First Step Act itself, which expressly does *not* make the change in the law upon which Lyman relies retroactive to individuals such as himself." ER-6 (citing First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, § 401(c)).

Congress determines whether a statute is retroactive, *Dorsey v. United States*, 567 U.S. 260, 274 (2012), and in this case Congress expressly did not make the changes in mandatory minimum sentences retroactive. This was not an accident; in the same statute, Congress expressly made *other* lowered penalties retroactive, demonstrating beyond peradventure that it knew how to do so if it wished. *See* First Step Act, § 404(b).

43

Regardless of the applicability or non-applicability of section 1B1.13, courts should not give weight to changes in sentencing laws that Congress intentionally made not retroactive. To hold otherwise would eviscerate congressional intent. Every inmate who might receive a reduced sentence today would be eligible for compassionate release, and Congress's decision not to make section 401 of the First Step Act retroactive would be meaningless.

Lyman does not cite any case in which a court has held that a statutory penalty reduction that Congress expressly provided was not retroactive constitutes, standing alone, an extraordinary and compelling reason warranting compassionate release. *See* OB 41-44. No case has upheld such an obvious end-run around the express intent of Congress.

The question of whether such a penalty reduction is *relevant* to a decision whether to grant compassionate release based primarily upon other factors is a closer question, but it is a question that requires little consideration here. The district court did not discuss the section 3553(a) factors in this case because Lyman simply did not demonstrate extraordinary and compelling reasons that—with or without

44

consideration of the section 3553(a) factors—might justify release. (It is apparent from the structure of section 3582(c)(1)(A) that section 3553(a) factors must be *considered* but are not themselves a *basis* for compassionate release.) Assuming arguendo that the reduction in the statutory mandatory minimum wrought by section 401 of the First Step Act can properly be considered pursuant to section 3553(a), it was not an abuse of the district court's discretion not to reach that factor—or other section 3553(a) factors—in the circumstances of this case.

In sum, Lyman failed to show extraordinary and compelling reasons warranting release, and the district court did not abuse its discretion when it so concluded.

## **CONCLUSION**

For the foregoing reasons, the district court's decision denying

Lyman's motion for compassionate release should be affirmed.

Respectfully submitted,

KENJI M. PRICE
*United States Attorney*

*s/ Marion Percell*
MARION PERCELL
*Chief of Appeals*
*District of Hawaii*
*Room 6100*
*PJKK Federal Building*
*300 Ala Moana Blvd.*
*Honolulu, Hawaii 96850*

*Telephone: (808) 541-2850*
*marion.percell@usdoj.gov*

FEBRUARY 10, 2021, Honolulu, Hawaii.

# ADDENDUM

## TABLE OF CONTENTS

18 U.S.C. § 3582(c) ...................................................................... A1

U.S.S.G. § 1B1.13 ...................................................................... A2

U.S.S.G. § 1B1.13 Application Note 1 ..................................... A3

The First Step Act, Pub. L. No. 115-391, § 401, 132 Stat. 5194
(Dec. 21, 2018) ..................................................................... A4

# ADDENDUM

**18 U.S.C. § 3582**
**Imposition of a sentence of imprisonment**

   **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—

   **(1)** in any case—

   **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

   **(i)** extraordinary and compelling reasons warrant such a reduction; or

   **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

A1

**(B)** the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

**(2)** in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

## U.S.S.G. § 1B1.13
## Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

**(1)**    **(A)**   **e**xtraordinary and compelling reasons warrant the reduction; or

       **(B)**   the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

**(2)**   the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

**(3)**   the reduction is consistent with this policy statement.

A2

**U.S.S.G. § 1B1.13 Application Note 1**

**1. Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2) [of U.S.S.G. § 1B1.13], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) **Medical Condition of the Defendant**.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant**.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

A3

(C) **Family Circumstances**.—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons**.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

**The First Step Act,** Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

**Sec. 401.  Reduce and Restrict Enhanced Sentencing for Prior Drug Felonies.**

    (a) CONTROLLED SUBSTANCES ACT AMENDMENTS.—The Controlled Substances Act (21 U.S.C. 801 et seq.) is amended—

    (1) in section 102 (21 U.S.C. 802), by adding at the end the following:

    "(57) The term 'serious drug felony' means an offense described in section 924(e)(2) of title 18, United States Code, for which—

    "(A) the offender served a term of imprisonment of more than 12 months; and

    "(B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

    "(58) The term 'serious violent felony' means—

"(A) an offense described in section 3559(c)(2) of title 18, United States Code, for which the offender served a term of imprisonment of more than 12 months; and

"(B) any offense that would be a felony violation of section 113 of title 18, United States Code, if the offense were committed in the special maritime and territorial jurisdiction of the United States, for which the offender served a term of imprisonment of more than 12 months."; and

(2) in section 401(b)(1) (21 U.S.C. 841(b)(1))—

(A) in subparagraph (A), in the matter following clause (viii)—

(i) by striking "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years" and inserting the following: "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years"; and

(ii) by striking "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release" and inserting the following: "after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years"; and

(B) in subparagraph (B), in the matter following clause (viii), by striking "If any person commits such a violation after a prior conviction for a felony drug offense has become final" and inserting the following: "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final".

A5

(b) Controlled Substances Import and Export Act amendments.—Section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)) is amended—

(1) in paragraph (1), in the matter following subparagraph (H), by striking "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not less than 20 years" and inserting "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years"; and

(2) in paragraph (2), in the matter following subparagraph (H), by striking "felony drug offense" and inserting "serious drug felony or serious violent felony".

(c) Applicability to pending cases.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

A6

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  | 20-10242

I am the attorney or self-represented party.

**This brief contains** | 8,797 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ◉ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ○ it is a joint brief submitted by separately represented parties;
  - ○ a party or parties are filing a single brief in response to multiple briefs; or
  - ○ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated _____.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Marion Percell | **Date** | Feb 10, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**  *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 20-10242

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Brief for Appellee

**Signature** | s/ Marion Percell     **Date** | Feb 10, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                       *Rev. 12/01/2018*